# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

* * * * *

DANIEL FINGAL, an individual, KEITH KANTOR, an individual, JOHANNA MCGEE,  as Personal Representative for the Estate of Jacqueline Helen McGee, CINDY BLOSS, as Personal Representative for the Estate of Betty Louise Meadows, BRADLEY PRUITT, an individual, CARLA THROOP, an individual, DANIEL RUSSELL, an individual, JENNIFER RUSSELL, an individual, DAVID GARGANO, an individual, CONCELOR DAVIS, an individual, ANDRE SHAW, as Conservator for Annette Shaw, MICHAEL PARLMER, an individual, FINESSE, INC, a Michigan Corporation,  ANDREW ROTH, an individual, PATRICK MERRILL, an individual, JEFFREY & AMY GRUPP, a married couple, RONALD BLANCO, an individual, MARCELLA RICHARDSON, an individual, HENRY MENDOZA, an individual, DENISE BALDWIN, an individual, CHERYL BOHDAN, an individual, PAUL VINCENT, an individual, BRANDON HARRIS, an individual, JAMES ROWLAND, an individual, JOHN T. ROY, for the Estate of John E. Roy, MARK LANGE, an individual, CORNELL DOWNING JR., an individual, ERICA VANVLEET, an individual, KENNETH VANCE, an individual, JOHN S. RUSSELL JR., an individual, JIMMIE L. VANAS, an individual, NANCY A. VANAS, an individual, MELISSA SHERWOOD, an individual, GERALD VANGESSEL, an individual, ELIZABETH HEWITT, as Personal Representative for the Estate of Helen Jeanette Malda, DONALD KEITH BELL JR., as Trustee for the G. Marilyn Bell Revocable Trust, DARRYL NEWTON, an individual,  BLAKE BARCLAY, an individual, JOSEPH JONES, III, an individual, BRANDY L. SCHULTZ, as Personal Representative for the Estate of Karen Sue Curtis, and ARNOLD DODDE, an individual, and for all those similarly situated,

Plaintiffs,

v.

Case No. 23-cv- _____

HON. _____

**COMPLAINT**

**(JURY DEMAND)**

**\*\* CLASS ACTION \*\***

ONTONAGON COUNTY, a Government Unit; MICHELE SMITH, in her individual and official capacity; ALGER COUNTY, a Government Unit; PAMELA JOHNSON, in her individual and official capacity; ALLEGAN COUNTY, a Government Unit; SALLY L. BROOKS, in her individual and official capacity; ANTRIM COUNTY, a Government Unit; SHERRY A. COMBEN, in her individual and official capacity; BARAGA COUNTY, a Government Unit; JILL C. TOLLEFSON, in her individual and official capacity; BARRY COUNTY, a Government Unit; SUSAN VANDERCAR, in her individual and official capacity; BENZIE COUNTY, a Government Unit; MICHELLE THOMPSON, in her individual and official capacity; BERRIEN COUNTY, a Government Unit; SHELLY WEICH, in her individual and official capacity; CALHOUN COUNTY, a Government Unit; BRIAN W. WENSAUER, in his individual and official capacity; CASS COUNTY, a Government Unit; HOPE ANDERSON, in her individual and official capacity; CHIPPEWA COUNTY, a Government Unit; CARMEN FAZZARI, in her individual and official capacity; DELTA COUNTY, a Government Unit; SHERRY GODFREY, in her individual and official capacity; DICKINSON COUNTY, a Government Unit; LORNA CAREY, in her individual and official capacity; EATON COUNTY, a Government Unit; ROBERT ROBINSON, in his individual and official capacity; EMMET COUNTY, a Government Unit; MARY MITCHELL, in her individual and official capacity; GOGEBIC COUNTY, a Government Unit; LISA HEWITT, in her individual and official capacity; GRAND TRAVERSE COUNTY, a Government Unit; HEIDI SCHEPPE, in her individual and official capacity; HILLSDALE COUNTY, a Government Unit; STEPHENIE KYSER, in her individual and official capacity; HOUGHTON COUNTY, a Government Unit; LISA MATTILA, in her individual and official capacity; INGHAM COUNTY, a Government Unit; ALAN FOX, in his individual and official capacity; ERIC SCHERTZING, in his individual capacity; IONIA COUNTY, a Government Unit; JUDITH A. CLARK, in her individual and official capacity; IRON COUNTY, a Government Unit; MELANIE CAMPS, in her individual and official capacity; KALAMAZOO COUNTY, a Government Unit; THOMAS WHITENER, in his individual and official capacity; KALKASKA COUNTY, a Government Unit; VALERIE THORNBURG, in her individual and official capacity;  KENT COUNTY, a Government Unit; PETER MACGREGOR in his individual and official capacity; LAKE

COUNTY, a Government Unit; KELLIE ALLEN, in her
individual and official capacity; LEELANAU COUNTY, a
Government Unit; JOHN GALLAGHER, III, in his individual
and official capacity; MACKINAC COUNTY, a Government
Unit; JENNIFER GOUDREAU, in her individual and official
capacity; MANISTEE COUNTY, a Government Unit;
RACHEL NELSON, in her individual and official capacity;
MARQUETTE      COUNTY,       a    Government      Unit;
JACQUELINE SOLOMON, in her individual and official
capacity; NICHOLAS BENSON, in his individual capacity;
MASON COUNTY, a Government Unit; ANDREW R.
KMETZ, IV, in his individual and official capacity;
MENOMINEE COUNTY, a Government Unit; BARBARA
A. PARRETT, in her individual and official capacity;
MISSAUKEE COUNTY, a Government Unit; LORI COX, in
her individual and official capacity; MONTCALM COUNTY,
a Government Unit; JOANNE VUKIN, in her individual and
official capacity; MUSKEGON COUNTY, a Government
Unit; TONY MOULATSIOTIS, in his individual and official
capacity; NEWAYGO COUNTY, a Government Unit;
JASON O'CONNELL, in his individual and official capacity;
OCEANA COUNTY, a Government Unit; MARY LOU
PHILLIPS, in her individual and official capacity; OSCEOLA
COUNTY, a Government Unit; TONIA HARTLINE, in her
individual and official capacity; OTTAWA COUNTY, a
Government Unit; AMANDA PRICE, in her individual and
official capacity; ST. JOSEPH COUNTY, a Government
Unit; KATHY HUMPHRIES, in her individual and official
capacity; SCHOOLCRAFT COUNTY, a Government Unit;
JANE COUWLIER-BRIDGES, in her individual and official
capacity; VAN BUREN COUNTY, a Government Unit;
TRISHA NESBITT, in her individual and official capacity;
WEXFORD COUNTY, a Government Unit; and KRISTI
NOTTINGHAM, in her individual and official capacity,

     Defendants.

_____/

# COMPLAINT

COME NOW the Plaintiffs, both individually and on behalf of a class of similarly situated

individuals and entities, by and through counsel, for their Complaint state as follows:

## PARTIES

1.      Plaintiff Daniel Fingal presently resides in Mountain, Wisconsin, and owned real property which was foreclosed in Ontonagon County, Michigan.

2.      Plaintiff Keith Kantor presently resides in Suwanee, Georgia, and owned real property which was foreclosed in Alger County, Michigan.

3.      Plaintiff Johanna McGee as Personal Representative for the Estate of Jacqueline Helen McGee presently resides in Alger County and owned real property which was foreclosed in Alger County, Michigan.

4.      Plaintiff Cindy Bloss as Personal Representative for the Estate of Betty Louise Meadows presently resides in Allegan County and owned real property which was foreclosed in Allegan County, Michigan.

5.      Plaintiff Bradley Pruitt presently resides in Otsego County and owned real property which was foreclosed in Antrim County, Michigan.

6.      Plaintiff Carla Throop presently resides in Louisville, Kentucky, and owned real property which was foreclosed in Barry County, Michigan.

7.      Plaintiffs Jennifer and Daniel Russell presently reside in Oakland County and co-owned real property which was foreclosed in Benzie County, Michigan.

8.      Plaintiff David Gargano presently resides in Valparaiso, Indiana, and owned real property which was foreclosed in Berrien County, Michigan.

9.      Plaintiff Concelor Davis presently resides in Lauderhill, Florida, and owned real property which was foreclosed in Calhoun County, Michigan.

10.     Plaintiff Andre Shaw as Conservator for Annette Shaw currently resides in Cass County and owned real property which was foreclosed in Cass County, Michigan.

11.     Plaintiff Michael Parlmer presently resides in Chippewa County and owned real property which was foreclosed in Chippewa County, Michigan.

12.     Plaintiff Finesse, Inc. is a Michigan Corporation that owned real property which was foreclosed in Delta County, Michigan.

13.     Plaintiff Andrew Roth presently resides in Apopka, Florida, and owned real property which was foreclosed in Eaton County, Michigan.

14.     Plaintiff Patrick Merrill presently resides in Gogebic County and owned real property which was foreclosed in Gogebic County, Michigan.

15.     Plaintiffs Jeffrey and Amy Grupp presently reside in Kalamazoo County, and co-owned real property which was foreclosed in Hillsdale County, Michigan.

16.     Plaintiff Ronald Blanco presently resides in Houghton County and owned real property which was foreclosed in Houghton County, Michigan.

17.     Plaintiff Marcella Richardson presently resides in Macomb County and owned real property which was foreclosed in Ingham County, Michigan.

18.     Plaintiff Henry Mendoza presently resides in Illinois and owned real property which was foreclosed in Iron County, Michigan.

19.     Plaintiff Denise Baldwin presently resides in Kalamazoo County and owned real property which was foreclosed in Kalamazoo County, Michigan.

20.     Plaintiffs Cheryl Bohdan and Paul Vincent co-owned real property which was foreclosed in Kalkaska County, Michigan.  Plaintiff Cheryl Bohdan presently resides in Harrison Arizona.  Plaintiff Paul Vincent presently resides in Abilene, Kansas.

21.     Plaintiff Brandon Harris presently resides in Kent County and owned real property which was foreclosed in Kent County, Michigan.

22.    Plaintiff James Rowland presently resides in Lake County and owned real property which was foreclosed in Lake County, Michigan.

23.    Plaintiff John T. Roy for the Estate of John E. Roy presently resides in Fort Mohave, Arizona, and owned real property which was foreclosed in Mackinac County, Michigan.

24.    Plaintiff Mark Lange presently resides in Mason County and owner real property which was foreclosed in Manistee County, Michigan.

25.    Plaintiff Cornell Downing, Jr. presently resides in Verona, Pennsylvania, and owned real property which was foreclosed in Marquette County, Michigan.

26.    Plaintiff Erica Vanvleet presently resides in Oceana County and owned real property which was foreclosed in Mason County, Michigan.

27.    Plaintiff Kenneth Vance presently resides in Genesee County and owned real property which was foreclosed in Missaukee County, Michigan.

28.    Plaintiff John S. Russell, Jr. presently resides in Montcalm County and owned real property which was foreclosed in Montcalm County, Michigan.

29.    Plaintiffs Jimmie L. Vanas & Nancy A. Vanas presently reside in Montcalm County and co-owned real property which was foreclosed in Montcalm County, Michigan.

30.    Plaintiff Melissa Sherwood presently resides in Muskegon County and owned real property which was foreclosed in Muskegon County, Michigan.

31.    Plaintiff Gerald Vangessel presently resides in Newaygo County and owned real property which was foreclosed in Newaygo County, Michigan.

32.    Plaintiff Elizabeth Hewitt as Personal Representative for the Estate of Helen Malda presently resides in Muskegon County and owned real property which was foreclosed in Oceana County, Michigan.

33.      Plaintiff Donald Keith Bell Jr. as Trustee for the G. Marilyn Bell Revocable Trust presently resided in Genesee County and owned real property which was foreclosed in Osceola County, Michigan.

34.      Plaintiff Darryl Newton presently resides in Hernando, Florida and owned real property which was foreclosed in Saint Joseph County, Michigan.

35.      Plaintiff Blake Barclay presently resides in Ionia County and owned real property which was foreclosed in Schoolcraft County, Michigan.

36.      Plaintiff Joseph Jones, III presently resides in Van Buren County and owned real property which was foreclosed in Van Buren County, Michigan.

37.      Plaintiff Brandy L. Schultz as Personal Representative for the Estate of Karen Sue Curtis presently resides in Berrien County and owned real property which was foreclosed in Van Buren County, Michigan.

38.      Plaintiff Arnold Dodde presently resident in Osceola County and owned real property which was foreclosed in Wexford County, Michigan.

39.      Defendant Counties of Alger, Allegan, Antrim, Baraga, Barry, Benzie, Berrien, Calhoun, Cass, Chippewa, Delta, Dickinson, Eaton, Emmet, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingham, Ionia, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Mackinac, Manistee, Marquette, Mason, Menominee, Missaukee, Montcalm, Muskegon, Newaygo, Oceana, Ontonagon, Osceola, Ottawa, Saint Joseph, Schoolcraft, Van Buren, and Wexford are governmental units in the State of Michigan that govern their individual counties (individually each a "County" and collectively, "Counties").

40.     The individually named Defendants ("Treasurers") are or were public officials serving as county treasurers for their respective county and are sued in their personal, individual capacities.

41.     The individually names Defendants, except Eric Schertzing and Nicholas Benson are current, office-holding public officials serving as county treasurers for their respective county and re also sued in their official capacities.

42.     Each county and its treasurer chose to be a Foreclosing Governmental Unit ("FGU") under MCL § 211.78, thus making affirmative, vantary, and discretionary decisions for each respective county based on its own county policy.

43.     Prior to the tax foreclosures referenced below, Plaintiffs owned real property in the Defendant Counties as set forth on the attached **Exhibit A** (individually, each listed property "Subject Property," and collectively, "Subject Properties").

44.     The name of each County Treasurer that seized and sold each Plaintiff's property(ies) is referenced as "County" and "Treasurer" respectively on the attached **Exhibit A**.

45.     Each class member similarly owned real property in one or more of the Counties.

## JURISDICTION AND VENUE

46.     This is a civil action seeking, among other request relief, recognition of a constructive trust and unpaid "just compensation" against Defendants for violations of Article X, § 2 of the Michigan Constitution and the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

47.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (civil rights cases); 28 U.S.C. § 2201 (declaratory judgments via the Declaratory Judgment Act); and 28 U.S.C. § 1367 (supplemental state law claims).

48.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since Defendants, individually and collectively, conduct or have conducted business in the Western District of Michigan and the Subject Properties are situated within the Western District of Michigan.

## TAX FORECLOSURES

49.     Prior to July 17, 2020, the collection of delinquent taxes was set out in the General Property Tax Act at sections MCL 211.78 to MCL 211.79a ("GPTA").

50.     The GPTA was modified on December 22, 2020 by 2020 Public Act 255 and 2020 Public Act 256.

51.     The GPTA allowed County to voluntarily choose to act as the Foreclosing Governmental Unit ("FGU") in lieu of designating the State of Michigan (the "State") to serve as the FGU. *See* MCL § 211.78(3).

52.     If County chose to be a FGU, the Defendants were permitted to seek foreclosure of real properties that had delinquent taxes due: "[A] foreclosing governmental unit may seek a judgment of foreclosure under [MCL § 211.78k] if the property is not redeemed as provided under this act . . ." MCL § 211.78(7)(b).

53.     The Defendants chose to act as the FGU pursuant to the GPTA, under MCL § 211.78, thus making affirmative, voluntary, and discretionary decisions for County based on their own policy.

54.     Defendants caused Plaintiffs' and class members' interests in the Subject Properties to be forfeited and then foreclosed pursuant to the GPTA as a result of delinquent taxes, unpaid assessments, fees, penalties, and/or interest (individually, "Tax Foreclosure" and collectively, "Tax Foreclosures").

55.     Following the Tax Foreclosures, County retained ownership or directed, implemented, or gave instructions that the Subject Properties be sold at auction to third parties ("Tax Sale" or "Tax Sales").

56.     Defendants conducted and implemented tax foreclosures of the Subject Properties and conveyed the Subject Properties pursuant to Tax Sales after the Michigan Supreme Court issued its decision in *Rafaeli, LLC* v. *Oakland County*, 505 Mich. 429; 952 N.W.2d 435 (2020) and after the enactment of 2020 P.A. 255 and 2020 P.A. 256.

57.     Upon information and belief, the Treasurer received proceeds from the Tax Sales that exceeded the Tax Delinquencies ("Surplus Proceeds").

58.     For each of Plaintiffs, the amount of the "tax delinquency" at the time of foreclosure sale, the State Equalized Value (or "SEV"), the foreclosure "Sale Price", and "Surplus Proceeds" are reflected on **Exhibit B**.

***RAFAELI* AS FOUNDATION FOR THE CLAIMS**

59.     On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429; 952 N.W.2d 435 (2020) ("*Rafaeli*"), in which the Court held that the Surplus Proceeds from Tax Sales retained by the FGU must be returned to Plaintiffs and class members. The *Rafaeli* opinion is attached hereto as **Exhibit C**.

60.     *Rafaeli* held that Plaintiffs and class members have a common law right to the Surplus Proceeds and held the County's retention of Surplus Proceeds violated Article X, § 2 of the Michigan Constitution. Specifically, the Michigan Supreme Court opined that:

> To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.

*Rafaeli,* 505 Mich. at 474-75; 952 N.W.2d at 461.

61.     The *Rafaeli* court's decision recognized Plaintiffs' and class members' vested right to return of the Surplus Proceeds as being protected by the Takings Clause of Michigan's Constitution. *Rafaeli*, 505 Mich. at 456.

62.     The Subject Properties were sold on or after January 1, 2021.

63.     Pursuant to *Rafaeli*, once the Subject Properties generated Surplus proceeds, Plaintiffs and class members were entitled to immediate turnover of those Surplus Proceeds.

### *HALL v. MEISNER* AFFIRMS THAT FEDERAL PROTECTIONS APPLY IN ADDITIONAL TO STATE CLAIMS

64.     On October 13, 2022, the Sixth Circuit Court of Appeals issued its opinion in *Hall v. Meisner*, __ F.4th __ (2023) ("*Rafaeli*"), in which the Court held that Fifth Amendment protections apply to Michigan foreclosures. The *Hall* opinion is attached hereto as **Exhibit D**.

### PUBLIC ACT 256 GIVES RISE TO A TAKING

65.     In December 2020, the Michigan legislature passed, and the governor signed, Public Acts 255 ("P.A. 255") and 256 ("P.A. 256"), giving both Acts immediate effect on December 22, 2020.

66.     Public Act 255 is attached as **Exhibit E**, and Public Act 256 is attached as **Exhibit F**.

67.     Pursuant to P.A. 256 (now MCL § 211.78t), Plaintiffs and class members are permitted to follow the procedures outlined in MCL § 211.78t to obtain what the statute defines as "Remaining Proceeds[1]."

---

[1] "Remaining proceeds" are Surplus Proceeds less certain allowable expenses, less a 5% commission fee payable to the Treasurer.

68.    MCL 211.78l attempts to restrict any effort to "recover any proceeds" to the procedures required under MCL § 211.78t.

69.    Upon information and belief, Defendants are asserting that successfully jumping the hurdles imposed by MCL § 211.78t is Plaintiffs' and class members' exclusive remedy and failure to clear all the hurdles imposed by MCL § 211.78t means the County gets to keep the money.

70.    Upon information and belief, Defendants have prevented Plaintiffs and class members from obtaining Surplus Proceeds or Remaining Proceeds if the strictest adherence to any of the procedures required under MCL § 211.78t are not followed.

71.    The government may not take a property owner's equity by legislatively redefining it, *Phillips v. Washington Legal Found.*, 524 U.S. 156, 167 (1998).

72.    Defendants asserted application of P.A. 256 in this manner constitutes an illegal restraint on the exercise of Plaintiffs' and class members' rights to obtain their constitutionally protected property or just compensation from Defendants.

73.    The State Legislature cannot remove self-executing constitutional rights. *See Promote the Vote v Sec'y of State*, 333 Mich App 93; 958 NW2d 861 (2020).

74.    The Takings Clause of the Fifth Amendment of the United States Constitution and Article X, § 2 of the Michigan Constitution are self-executing constitutional provisions.

75.    Defendants have failed or otherwise refused to return all of Plaintiffs' and class members' Surplus Proceeds, and in most instances, have failed or otherwise refused to return any of Plaintiffs' and class members' Surplus Proceeds.

76.    Failure to turn over Plaintiffs' and class members' Surplus Proceeds constitutes an unconstitutional taking of Plaintiffs' and class members' property.

**PLAINTIFFS' AND CLASS MEMBERS' PROPERTIES WERE FORECLOSED AND THE SURPLUS PROCEEDS WERE NOT TURNED OVER TO THE RIGHTFUL OWNERS**

77.      Upon information and belief, at the time of the Tax Foreclosures of the Subject Properties, Plaintiffs and class members owed small amounts of delinquent taxes and/or assessments, interests, penalties, and fees, reasonably related to the foreclosure and sale of the Subject Properties (hereinafter, "Tax Delinquency" or "Tax Delinquencies") as set forth on Exhibit B.

78.      Defendants have failed and/or refused to turn over the Surplus Proceeds to Plaintiffs and class members.

79.      Defendants' continued retention of Plaintiffs' and class members' Surplus Proceeds remains outside the scope of activity authorized by the United States Constitution or the State Constitution.

80.      Upon information and belief, Defendants assert P.A. 256 (and specifically MCL § 211.78t) as a defense and excuse for refusing to return Surplus Proceeds or the lesser Remaining Proceeds to similarly situated individuals.

81.      Defendants claimed that Plaintiffs and class members cannot obtain their Surplus Proceeds or Remaining Proceeds because they did not submit a Notice of Intention to Claim Remaining Proceeds with the Defendants by July 1 in the year of foreclosure.

82.      Where Defendants have paid Remaining Proceeds, Defendants have kept five percent of Plaintiffs and class members Surplus Proceeds.

83.      P.A. 256, as enforced, in effect acts as an unconstitutional restraint on Plaintiffs' and class members' rights.

84.     As a result of *Rafaeli* and Defendants' unconstitutional and unconscionable retention of Plaintiffs' and class members' Surplus Proceeds, the Surplus Proceeds are and have been imbued with and are subject to a constructive, involuntary, and/or *ex delicto* trust.

85.     Plaintiffs and class members remain entitled to immediate turnover/return of the Surplus Proceeds generated from the Subject Properties.

86.     Defendants either wantonly or intentionally caused Plaintiffs and class members harm when County ignored, or otherwise disregarded, Plaintiffs' and class members' rights guaranteed under the Michigan and United States Constitutions.

87.     In light of *Rafaeli*, Defendants' use of P.A. 256 to avoid turnover Plaintiffs' and class members' property is a taking in violation of Article X, § 2 of Michigan's Constitution and of the Fifth Amendment of the United States Constitution.

88.     Defendants did not initiate any condemnation action, process, or procedure for the taking of, or compensation for, Plaintiffs' and class members' Surplus Proceeds.

89.     The process, plan, and mechanism by which Defendants assert Plaintiffs and class members are to obtain Surplus Proceeds or at least their Remaining Proceeds attempts to strip Plaintiffs and class members of their vested property rights without effective due process or just compensation.

## CLASS ALLEGATIONS

90.      This action is brought by Plaintiffs individually and pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the owners of real property whose properties were foreclosed and/or sold on January 1, 2021 and at all times thereafter, including and through the issuance of a final judgment in this matter, and whose Surplus Proceeds have not been returned or were otherwise subjected to the unconstitutional acting process and legislation that, absent a

constructive trust, resulted in the taking, conversion, and/or *ex delicto* withholding of their Surplus Proceeds.

91.    The proposed class consists of all owners of real property located in various Defendant Counties whose real property was seized through a real property tax foreclosure action and/or disposed of through a Tax Sale for an amount in excess of the property's Tax Delinquency and who did not receive compensation for the full Surplus Proceeds generated in excess of the Tax Delinquency, for the period January 1, 2021 through the date a final judgment is entered.

92.    The number of persons who have been injured by the practices discussed herein is sufficiently numerous as to make class litigation the most practical method to secure redress for the injuries sustained and to provide class-wide equitable relief.

93.    Plaintiffs' claims are common to, and typical of, those raised by the class members Plaintiffs seek to represent including:

   a.   Whether P.A. 256 is unconstitutional on its face and/or as applied and/or in effect;

   b.   Whether Plaintiffs and class members have had their property rights impaired or abrogated by P.A. 256;

   c.   Whether Defendants failed to turn over plaintiffs' and class members' Surplus Proceeds pursuant to the Michigan Supreme Court's decision in *Rafaeli*;

   d.   Whether Defendants failed to turn over plaintiffs' and class members' Surplus Proceeds as protected by the Fifth Amendment;

   e.   Whether the Defendants kept Plaintiffs' and class members' Surplus Proceeds for the benefit of the County.

f.  Whether the Surplus Proceeds earned interest or other pecuniary return for the benefit of the County;

g.  Whether Defendants retained any interest or other return earned on the Surplus Proceeds for the benefit of the County;

h.  Whether Defendants failed to put in place, have, or undertake a permissible process to turn over Surplus Proceeds to Plaintiffs and class members after the Surplus Proceeds were generated;

i.  Whether Remaining Proceeds are the same as Surplus Proceeds;

j.  Whether Defendants failed to put in place, have, or undertake a sufficient process to turnover Surplus Proceeds to Plaintiffs and class members;

k.  Whether County was unjustly enriched by its illegal retention of Surplus Proceeds;

l.  Whether Surplus Proceeds and constitutionally protected property can vanish into thin air; and

m. Whether a constructive trust has been created under which Defendants hold the Surplus Proceeds for the benefit of the Plaintiffs and class members.

94. The foregoing issues of fact and law predominate over any issues that require individualized proof.

95. Plaintiffs and class members have suffered the same injury.

96. There are clear questions of law raised by the named Plaintiffs' claims common to and typical of those raised by the class Plaintiffs seek to represent including:

a.  Whether the Michigan Supreme Court's decision in *Rafaeli* requires the turnover of Plaintiffs' and class members' Surplus Proceeds;

b.  Whether Defendants' retention of Plaintiff' and class members' Surplus Proceeds violated the Fifth Amendment;

c.  Whether MCL § 211.78t, as implemented by P.A. 256, is a permissive statute;

d.  Whether MCL § 211.78t, as implemented by P.A. 256, precludes Defendants from turning over Plaintiffs' and class members' Surplus Proceeds if a Notice of Intention to Claim Proceeds is not filed by July 1 following the effective date of the foreclosure judgment;

e.  Whether, if MCL § 211.78t does entail such a prohibition, P.A. 256 is unconstitutional on its face and/or as applied;

f.  Whether P.A. 256 hinders Plaintiffs' and class members' property rights;

g.  Whether Defendants committed an unconstitutional taking by refusing to pay just compensation when retaining and refusing to turnover Surplus Proceeds from each Subject Property pursuant to *Rafaeli*;

h.  Whether Defendants have appropriated Plaintiffs' and class members' property in the form of Surplus Proceeds without payment of just compensation in violation of Article X, § 2 of the Michigan Constitution and the Fifth Amendment of the United States Constitution pursuant to *Rafaeli*;

i.  Whether Defendants committed an inverse condemnation of Plaintiffs' and class members' property when the Counties retained and failed and/or refused to turnover Plaintiffs' and class members' Surplus Proceeds pursuant to *Rafaeli*;

j.  Whether Defendants retention of five percent of the Surplus Proceeds is a taking entitling Plaintiffs to just compensation;

k.  Whether Defendants the provision of P.A. 256 allowing the retention of five percent of the Surplus Proceeds is unconstitutional;

l.  Whether Defendant Counties have been unjustly enriched by their retention of Plaintiffs' and class members' Surplus Proceeds; and

m.  Whether the Surplus Proceeds or the five percent are held by County as trustee.

97.    Defendants have acted and are continuing to act on grounds generally against the interest of Plaintiffs and class members in the same manner.

98.    The violations of the federal and state Constitutions and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all class members.

99.    An actual controversy within the Court's jurisdiction has arisen between Plaintiffs and class members and Defendants concerning the applicability and constitutionality of P.A. 256 and the return of Surplus Proceeds.

100.    Except as otherwise noted, Plaintiffs and class members share all allegations outlined in this complaint in common.

101.    Plaintiffs, as class representatives, will fairly and adequately protect the interest of the class members, will vigorously prosecute the suit on behalf of the class, and will represent the class members with highly experienced counsel.

102.    The maintenance of this action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or vary adjudications with respect to individual members of the class and/or the Defendants.

**COUNT I**
**DECLARATIVE RELIEF**
**P.A. 256 IS UNCONSTITUTIONAL AND/OR DOES NOT APPLY TO PLAINTIFFS OR**
**CLASS MEMBERS' CLAIMS**

103.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

104.    The Subject Properties were sold, and Surplus Proceeds were generated, after July 1 following the effective date of foreclosure.

105.    Pursuant to MCL § 211.78t, Plaintiffs and class members were permitted to submit Michigan Department of Treasury Form 5743 (Notice of Intention to Claim Interest in Foreclosure Sales Proceeds) "by the July 1 immediately following the effective date of foreclosure" of the Subject Properties (July 1, 2021) to obtain Remaining Proceeds. MCL § 211.78t(2).

106.    MCL § 211.78t also sets forth procedures for Plaintiffs and class members to follow to obtain remaining proceeds by filing a verified motion by May 15 of the year following foreclosure.  MCL § 211.78t(6).

107.    MCL § 211.78l purports to make MCL § 211.78t the exclusive mechanism for recovery of any proceeds.

108.    Plaintiffs, except for Jennifer and Daniel Russell, and class members did not submit Form 5743 by July 1 or did not follow one or more of the other procedures under MCL § 211.78t.

109.    MCL § 211.78t is an unreasonable restraint on Plaintiffs' and class members' constitutionally protected, vested property rights.

110.    MCL § 211.78t requires Plaintiffs and class members to use Form 5743 to make claim to their property, in the form of Remaining Proceeds, before that property even exists.

111.    The procedures under MCL § 211.78t are arbitrary.

112.    Article X, § 2 of Michigan's Constitution and the Takings Clause of the Fifth Amendment of the United States Constitution protect a self-executing constitutional right.

113.    Defendants have used the procedures under MCL § 211.78t to deny return of Surplus Proceeds to Plaintiffs and class members.

114.    MCL § 211.78t, as applied and in practice, violates the Michigan and United States Constitutions through provisions that remove/prohibit self-executing constitutional rights to receive "just compensation" under Article X, § 2 of Michigan's 1963 Constitution and the Fifth Amendment of the United States Constitution.

115.    The State Legislature cannot remove self-executing constitutional rights.

116.    MCL § 211.78t also violates the Equal Protection Clause under Article I, § 2 of Michigan's Constitution and the Fourteenth Amendment of the United States Constitution by implementing an impermissible classification scheme to the disadvantage of claimants who filed Form 5743 after July 1 immediately following the effective date of the Tax Foreclosure.

117.    MCL § 211.78t(2), as implemented by P.A. 256, treats 2021 claimants who filed Form 5743 after July 1 immediately following the effective date of the Tax Foreclosure differently from claimants who filed Form 5743 on or before July 1 immediately following the effective date of the Tax Foreclosure although both classifications of claimants possess the same vested, constitutionally protected property interest in their Surplus Proceeds.

118.    The classification scheme under MCL § 211.78t purports to prohibit claimants who filed Form 5743 after July 1 immediately following the effective date of the Tax Foreclosure from obtaining their Surplus Proceeds or Remaining Proceeds.

119.    The classification scheme under MCL § 211.78t interferes with Plaintiffs' and class members' vest and fundamental property rights; it is illegal and impermissible.

120.    The procedures under MCL § 211.78t are not narrowly tailored to a compelling state interest or reasonably related to a legitimate state interest.

121.    Further, MCL § 211.78t deprives Plaintiffs and class members of procedural and substantive due process under the Michigan and United States Constitutions.

122.    The procedure outlined in MCL § 211.78t abrogates Plaintiffs and class members' vested property rights without requiring notice of the July 1 deadline or other notice or adjudication of a purported confiscation.

123.    Defendants did not provide sufficient notice of the July 1 deadline.

124.    Defendants' notices of the July 1 deadline included conflicting messaging and were confusing, at best.

125.    Defendant did not inform Plaintiffs and class members of the eliminative effect of MCL § 211.78t on their property rights.

126.    Plaintiffs and class members were not provided with a meaningful opportunity to object to the eliminative effect of MCL § 211.78t on their property rights.

127.    Additionally, the July 1 immediately following the effective date of the Tax Foreclosure deadline under MCL § 211.78t coupled with the exclusive remedy provisions of MCL § 211.78l impinges on Plaintiffs' and class members' vested, fundamental property rights in an unconscionable manner by completely abrogating Plaintiffs' and class members' right to obtain the Surplus Proceeds generated from the Subject Properties based on an arbitrary date.

128.    The requirements of P.A. 256 does not promote a legitimate governmental interest or purpose.

129.    The government's interference with Plaintiffs' and class members' property rights through the enactment of P.A. 256 does not serve a legitimate governmental interest or purpose.

130.    Defendants have been unjustly enriched by their unconstitutional and illegal retention of Plaintiffs' and class members' Surplus Proceeds.

131.    P.A. 256 permits Defendants to retain a 5% commission fee from Plaintiffs' and class members' Surplus Proceeds.

132.    Defendants' retention of a 5% commission fee is an unconstitutional taking as well as a violation of the Eighth Amendment prohibition against excessive fines.

## COUNT II
## CONSTRUCTIVE TRUST

133.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

134.    After the Michigan Supreme Court issued its opinion in *Rafaeli*, Defendants sold the Subject Properties and generated Surplus Proceeds.

135.    Upon information and belief, in reliance on MCL § 211.78t, Defendants failed and/or refused to turnover Plaintiffs' and class members' Surplus Proceeds.

136.    Defendants acquired custody of Plaintiffs' and class members' property under such circumstances that Defendants may not in good conscience retain the beneficial interest of Plaintiffs' and class members' Surplus Proceeds.

137.    Defendants retained Plaintiffs' and class members' property by way of unconstitutional provisions—namely MCL § 211.78t—under the GPTA. Defendants used MCL § 211.78t to shield them from their obligation to return Plaintiffs and class members' Surplus Proceeds despite knowledge of the Michigan Supreme Court's decision in *Rafaeli*.

138.    Defendants continue to unlawfully withhold Plaintiffs' and class members' Surplus Proceeds.

139.    A constructive trust arises by operation of law. The Michigan Supreme Court in

*Weir v. Union Trust Co.*, 188 Mich. 452, 463; 154 N.W.2d 357 (1915) stated:

> Constructive trusts arise by operation of law. The following is found in 39
> Cyc. p. 169:
>
> 'Constructive trusts do not arise by agreement or from intention, but by
> operation of law; and fraud, active or constructive, is their essential element.
> Actual fraud is not necessary, but such a trust will arise whenever the
> circumstances under which property was acquired make it inequitable that
> it should be retained by him who holds the legal title. Constructive trusts
> have been said to arise through the application of the doctrine of equitable
> estoppel, or under the broad doctrine that equity regards and treats as done
> what in good conscience ought to be done. Such trusts are also known as
> trusts *ex maleficio* or *ex delicto*, or involuntary trusts, and their forms and
> varieties are practically without limit, being raised by courts of equity
> whenever it becomes necessary to prevent a failure of justice.'

140.    A constructive trust exists when "property has been obtained through fraud,

misrepresentation, concealment undue influence, duress, taking advantage of one's weaknesses or

necessities, or any other similar circumstances which render is unconscionable for the holder of

the legal title to retain and enjoy the property." *Kammer Asphalt Paving Co., Inc. v East China

Twp. Sch.*, 443 Mich. 176, 188; 504 N.W.2d 635 (1993).

141.    Tax Foreclosure is "not a confiscation," and because a "good faith" construction of

the tax foreclosure statute requires government to act as trustee in selling and holding funds for

the former owner indefinitely.  *United States v. Taylor,* 104 U.S. 216 at 221-222.

142.    A court is permitted to impose a constructive trust when necessary to do equity and

avoid unjust enrichment. *Id*. Thus, a constructive trust may be imposed under any circumstance

that renders it unconscionable for the holder of legal title to retain and enjoy the property. *Id*.

143.    Defendants' conduct in failing and/or refusing to turn over Plaintiffs' and class

members' Surplus Proceeds is *ex delicto*.

144.    *Rafaeli* imposed an affirmative obligation on Defendants to return Plaintiffs' and class members' Surplus Proceeds: "Similarly, we hold that defendants were required to return the surplus proceeds and that defendants' failure to do so constitutes a government taking under the Michigan Constitution entitling [Plaintiffs and class members] to just compensation." *Rafaeli*, 505 Mich. at 479.

145.    Despite knowing that the Michigan Supreme Court ruled that they were obligated to return the Surplus Proceeds to Plaintiffs and class members, upon information and belief, Defendants have relied on MCL § 211.78t and refused to do so.

146.    Defendants' conduct is a willful continuance of unconstitutional and unjust practices that Defendants engaged in prior to *Rafaeli*.

147.    Defendants acquired possession of Plaintiffs' and class members' Surplus Proceeds through duress, taking advantage of Plaintiffs' and class members' weakness, or through Defendants' own conduct of enforcing the unconstitutional provisions of P.A. 256, and therein, making it impossible for Plaintiff and class members to obtain their Surplus Proceeds.

148.    Defendants have been unjustly enriched by their retention of Plaintiffs' and class members' Surplus Proceeds.

149.    Defendants acquired and continue to hold Surplus Proceeds which are imbued with and subject to a constructive trust for the benefit of Plaintiffs and class members as a matter of law.

150.    It is inequitable and unconscionable for Defendants to retain Plaintiffs' and class members' Surplus Proceeds as well as any benefit Defendants have obtained from retaining Plaintiffs' and class members' Surplus Proceeds.

151.     Plaintiffs and class members are entitled to the imposition of a constructive trust on their Surplus Proceeds.

152.     Plaintiffs and class member are the beneficiaries to constructive trusts in their favor.

**COUNT III**
**UNJUST ENRICHMENT**
**(AGAINST COUNTY DEFENDANT)**

153.     Plaintiffs and class members incorporate the allegations contained in all pertaining paragraphs.

154.     Defendants have been unjustly enriched by its illegal taking and retention of Plaintiffs' and class members' Surplus Proceeds.

155.     Upon information and belief, Defendants have put Plaintiffs' and class members' Surplus Proceeds to public use and/or generated interest income from those Surplus Proceeds.

156.     Defendants have been benefitted by their retention of Plaintiffs' and class members' Surplus Proceeds.

157.     The benefits Defendants received from retaining Plaintiffs' and class members' Surplus Proceeds are at Plaintiffs' and class members' expense because Plaintiffs and class members have been deprived of their vested property interest in those Surplus Proceeds.

158.     Plaintiffs and class members do not have an adequate and complete remedy at law except as asserted in this complaint.

159.     It is inequitable for Defendants to retain Plaintiffs' and class members' property and any benefits Defendants have obtained from retaining Plaintiffs' and class members' property.

**COUNT IV**
**TAKING – FIFTH AMENDMENT VIOLATION**
**"ARISING DIRECTLY UNDER" THE FIFTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

160.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

161.    Plaintiffs and class members make this claim directly under the Fifth Amendment of the United States Constitution.

162.    The Fourteenth Amendment of the United States Constitution has made the Fifth Amendment directly applicable to the individual States.

163.    Defendants, under the guise of MCL § 211.78t, took Plaintiffs' and class members' Surplus Proceeds without just compensation in violation of the Fifth Amendment.

164.    Defendants' refusal to take any action effectuating the turnover of Plaintiffs' and class members' property deprives Plaintiffs and class of their constitutional right to just compensation in violation of the Fifth Amendment, and the violation can, therefore, be remedied by a direct claim under the Fifth Amendment.

165.    The July 1 immediately following the effective date of the Tax Foreclosure deadline and other procedural requirements used to bar Plaintiffs' and class members' claims under P.A. 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds; P.A. 256 and/or works as an additional taking of Plaintiffs' and class members' property in violation of the Fifth Amendment.

166.    Defendants have illegally retained Plaintiffs' and class members' Surplus Proceeds since those Surplus Proceeds were generated at the time of sale.

167.    Defendants have denied Plaintiffs and class members the use of their Surplus Proceeds.

168.     Plaintiffs and class members are entitled to interest on their Surplus Proceeds as a part of just compensation.

169.     Upon information and belief, Defendants have accrued interest on Plaintiffs' and class members' Surplus Proceeds.

170.     Defendants' retention of any earnings or interest on the Surplus Proceeds is a continual, ongoing taking that is causing continual harm.

171.     Plaintiffs and class members have been injured by Defendants' unlawful retention of their Surplus Proceeds and have suffered damages.

## COUNT V
## 42 U.S.C. § 1983
## TAKING – FIFTH AMENDMENT VIOLATION
## (AGAINST ALL DEFENDANTS)

172.     Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

173.     The Fifth Amendment, made applicable to the States via the Fourteenth Amendment, is a constitutional provision and right requiring just compensation upon a taking by Defendants. *See Knick v Twp. Of Scott*, 139 S. Ct. 2162 (2019).

174.     Defendants took Plaintiffs' and class members' Surplus Proceeds and appropriated this property for public use without the payment of just compensation in violation of the Fifth Amendment to the United States Constitution.

175.     Defendants' refusal and/or failure to return Plaintiffs' and class members' property deprived Plaintiffs and class members of their vested property interest in their Surplus Proceeds and violated their constitutional right to just compensation under the Fifth Amendment of the United States Constitution.

176.    The enactment of P.A. 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds' P.A. 256 is an additional taking of Plaintiffs' and class members' property in violation of the Fifth Amendment.

177.    Plaintiffs and class members are entitled to interest from the time of taking until payment is made as a part of just compensation in accordance with *Jacobs v U.S.*, 290 U.S. 13 (1933); *Knick v Twp. Of Scott*, 139 S. Ct. 2162 (2019) and its progeny.

178.    Defendants' retention of any earnings or interest on Plaintiffs' and class members' Surplus Proceeds for public use is a continual, ongoing taking that is causing continual harm.

179.    Defendants' taking of Plaintiffs' and class members' Surplus Proceeds is actionable under 42 U.S.C. § 1983, and Plaintiffs and class members are entitled to attorney fees pursuant to 42 U.S.C. § 1988.

180.    Plaintiffs and class members have been injured by Defendants' unlawful retention of their Surplus proceeds and have suffered damages.

## COUNT VI
## 42 U.S.C. § 1983
## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
## (AGAINST ALL DEFENDANTS)

181.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

182.    The Fourteenth Amendment of the United States Constitution guarantees substantive due process.

183.    The Fourteenth Amendment is applicable to the State of Michigan.

184.    Plaintiffs' and class members' vested property interest in Surplus Proceeds is a fundamental property right as declared in *Rafaeli, supra.*

185.    Defendants' use of P.A. 256 to retain, or refusal to turn over or return for any reason, Plaintiffs' and class members' Surplus Proceeds impinged on Plaintiffs' and class members' fundamental property right in their Surplus Proceeds and deprived them of substantive due process.

186.    Defendants' conduct in seizing Plaintiffs' and class members' Surplus Proceeds and refusal to return the same, despite knowledge of the Michigan Supreme Court's clear and dogmatic pronouncements in *Rafaeli* amounts to arbitrary governmental action that shocks the conscience.

187.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

188.    Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

## COUNT VII
### 42 U.S.C. § 1983
### VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (AGAINST ALL DEFENDANTS)

189.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

190.    Plaintiffs and class members are entitled to procedural due process under the Fourteenth Amendment of the United States Constitution.

191.    The Fourteenth Amendment is applicable to the State of Michigan.

192.    Plaintiffs and class members have a constitutionally protected property interest in the Surplus Proceeds generated from the Subject Properties.

193.    Defendants did not provide sufficient notice to Plaintiffs and class members of the preclusive effect of MCL § 211.78t on Plaintiffs' and class members' vested property interest in their Surplus Proceeds.

194.    Defendants' taking and retention of Plaintiffs' and class members' Surplus Proceeds without proper notice or the opportunity to object deprived Plaintiffs and class members of procedural due process.

195.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

**COUNT VIII**
**42 U.S.C. § 1983**
**VIOLATION OF THE EIGHTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

196.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

197.    This count is pled to the extent that Defendants argue or assert that Plaintiffs and class members were punished with an in-rem civil forfeiture of Surplus Proceeds pursuant to the GPTA.

198.    This count is also pled to the extent that Defendants assert that MCL § 211.78t(9) is applicable to Plaintiffs and class members to decrease the amount of Plaintiffs' and class members' Surplus Proceeds by the 5% commission fee stated therein.

199.    The Fourteenth Amendment makes the Eighth Amendment applicable to the State of Michigan.

200.    By imposing and retaining an excessive fine in the form of the *in-rem* civil forfeiture of Plaintiffs' and class members' equity interest in the Subject Properties in excess of

30

the Tax Delinquencies, Plaintiffs' and class members' eighth amendment rights have been violated.

201. Defendants' retention of Plaintiffs' and class members' Surplus Proceeds, which by definition is exclusive of the Tax Delinquencies, is punitive and not remedial.

202. Defendants' retention of a 5% commission fee deducted from Plaintiffs' and class members' Surplus Proceeds is punitive.

203. Defendants' conduct was reckless and undertaken with complete in difference to Plaintiffs' and class members' federal right to be free from violations of the Eighth Amendment.

204. Violations of the Eighth Amendment are remedied by a money judgment against Defendants pursuant to 42 U.S.C § 1983 and § 1988.

205. Plaintiffs and class members have been injured by Defendants' lawful retention of their Surplus Proceeds and have suffered damages.

**COUNT IX**
**TAKING CLAIM – INVERSE CONDEMNATION IN VIOLATION OF ARTICLE X, § 2 OF MICHIGAN'S CONSTITUTION (AGAINST COUNTY DEFENDANTS AND DEFENDANT TREASURERS IN THEIR OFFICIAL CAPACITIES)**

206. Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

207. *Rafaeli* vested in Plaintiffs and class members a property interest in Surplus Proceeds protected by Article X, § 2 of Michigan's 1963 Constitution (Michigan's "Takings Clause").

208. Defendants' retention of Plaintiffs' and class members' Surplus Proceeds after *Rafaeli* violates Michigan's Takings Clause and constitutes a taking under Article X, § 2 of Michigan's Constitution.

209.    The enactment of P.A. 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds; P.A. 256 is an additional taking of Plaintiffs' and class members' property in violation of Article X, § 2 of Michigan's Constitution.

210.    Defendants took Plaintiffs' and class members' property without using any direct condemnation process before the taking, including those Defendants could have utilized as outlined under the Uniform Condemnation Procedures Act, MCL § 213.51, et seq.

211.    Defendants utilized the provisions of MCL § 211.78t to prevent Plaintiffs and class members from obtaining their Surplus Proceeds.

212.    Defendants have not paid and continue to refuse to pay just compensation to Plaintiffs and class members.

213.    Defendants do not intend to pay just compensation in the future to Plaintiffs and class members.

214.    An inverse condemnation has occurred as to the Plaintiffs and class members.

215.    Plaintiffs and class members have been injured by Defendants' actions.

**216.**    Plaintiffs and class members are entitled to maintain this action as an action for inverse condemnation. *See Electro-Tech, Inc. v HF Campbell Co.*, 433 Mich. 54; 445 N.W.2d 61 (1989).

## COUNT X
## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER ARTICLE I, § 17 OF THE MICHIGAN CONSTITUTION
## (AGAINST ALL DEFENDANTS)

217.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

218.    Pursuant to Article I, Section 17 of the Michigan Constitution, Plaintiffs and class members are entitled to substantive due process.

219.    Substantive due process "protects against the arbitrary exercise of governmental power . . ." *Bonner v City of Brighton*, 495 Mich. 209, 224; 848 N.W.2d 380 (2014).

220.    Defendants' use of P.A. 256 to take Plaintiffs' and class members' Surplus Proceeds interfered with Plaintiffs' and class members' vested property rights and deprived them of substantive due process.

221.    Defendants' conduct in seizing Plaintiffs' and class members' Surplus Proceeds (whether the full amount or five percent) and refusal to return the same, despite knowledge of the Michigan Supreme Court's decision in *Rafaeli* is an arbitrary exercise of governmental power that shocks the conscience.

222.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

223.    Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

**COUNT XI**
**VIOLATION OF PROCEDURAL DUE PROCESS UNDER ARTICLE I, § 17 OF THE**
**MICHIGAN CONSTITUTION**
**(AGAINST ALL DEFENDANTS)**

224.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

225.    Plaintiffs and class members are entitled to procedural due process.

226.    Plaintiffs and class members have a constitutionally protected property interest in the Surplus Proceeds generated from the Subject Properties.

227.    Plaintiffs and class members have a constitutionally protected interest in the Surplus Proceeds generated from the Subject Properties.

228.    Defendants' taking and retention of Plaintiffs' and class members' Surplus Proceeds without notice or the opportunity to object or be heard prior to the taking deprived Plaintiffs and class members of procedural due process.

229.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

**COUNT XII**
**INJUNCTIVE RELIEF**
**(AGAINST ALL DEFENDANTS)**

230.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

231.    Defendants are in possession of Plaintiffs' and class members' Surplus Proceeds in violation of the Michigan and United States Constitutions.

232.    Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

233. Equity and good conscience require that this Court enter an order granting Plaintiffs' and class members' request for injunctive relief enjoining Defendants from retaining Plaintiffs' and class members' Surplus Proceeds and requiring Defendants to turnover those Surplus Proceeds to Plaintiffs and class members.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of those similarly situated, request that this Court grant the following relief:

a. Enter an Order certifying this case as a class action;

b. Enter an Order declaring that Plaintiffs will adequately represent the class and naming Plaintiffs as the lead Plaintiffs in this class action matter;

c. Enter an Order declaring MCL § 211.78t as unconstitutional on its face;

d. Enter an Order declaring MCL § 211.78t as unconstitutional as applied to Plaintiffs and class members;

e. Enter an Order declaring MCL § 211.78t as unconstitutional as in effect to Plaintiffs and class members;

f. Enter an Order declaring Defendants' retention of Plaintiffs' and class members' Surplus Proceeds as unconstitutional under the Michigan and United States Constitutions;

g. Enter an Order declaring that Plaintiffs' and class members' Surplus Proceeds are imbued with a constructive trust to remedy Defendants' unconscionable withholding of Plaintiffs' and class members' property and requiring an accounting and turnover of all Surplus Proceeds and any income earned thereon over the relevant timeframe;

h. Enter an Order finding Defendants liable under any or all counts contained herein;

i. Enter an Order for any and all damages and/or compensation as is deemed proper;

35

j.  Enter an Order requiring Defendants to turn over to Plaintiffs and class members Surplus Proceeds plus interest from the date the Subject Properties were sold;

k.  Enter an Order disgorging any interest or money Defendants earned from retention of Surplus Proceeds;

l.  Enter an Order for an award of any all damages available under federal and state law as applicable;

m. Enter an Order for an award of attorney fees and expenses pursuant to all other applicable laws, rules, or statutes;

n.  Enter an order for interest from the date of Judgment until Defendants pay the Judgment;

o.  Enter an order enjoining the Defendants from retaining Plaintiffs and class members Surplus Proceeds and requiring Defendants to turnover those Surplus Proceeds to Plaintiffs and class members;  and

p.  Enter an order for all other legal and/or equitable relief the Court deems proper.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Date:  March 31, 2023                                    Respectfully submitted,


/s/ Donald R. Visser_____
**Donald R. Visser (P27961)**
Donovan J. Visser (P70847)
*Counsel for Plaintiffs*

VISSER AND ASSOCIATES, PLLC
2480 44th Street, Suite 150
Kentwood, MI
Tel: (616) 531-9860
Fax: (616) 531-9870
donv@visserlegal.com
donovan@visserlegal.com